# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATIC MEDIA LLC. | |
|     Plaintiff, | Case No. 18-cv-330 |
| vs. | JURY TRIAL DEMANDED |
| LEADER ACCESSORIES LLC | |
|     Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO STATIC MEDIA LLC'S MOTION FOR SANCTIONS AGAINST DEFENDANT LEADER ACCESSORIES LLC

Defendant, Leader Accessories LLC ("Leader"), files its Opposition to Plaintiff Static Media LLC's ("Static") Motion for Sanctions Against Leader as follows.

Leader opposes this Motion because there has not been any violation of this action's Protective Order.

Shlomo Y. Hecht is defense counsel for OJ Commerce LLC ("OJ Commerce") in another design patent infringement case filed by Static in the Southern District of Florida on January 30, 2019 [*Static Media LLC v. OJ Commerce, LLC*, Case No. 19-cv-60270] involving the same D771,400 design patent that is the patent-in-suit in this action.

In late 2018, counsel for Leader and OJ Commerce agreed to form a Joint Defense Group ("JDG") for the purpose of discussing and consulting with one another to promote the common interest of defense against Static's patent infringement allegations, pending further formalization of a Joint Defense Agreement ("JDA"). (Declaration of Lee ¶5; Declaration of Hecht ¶4). On

February 15, 2019, OJ Commerce and Leader finalized and executed a JDA (Declaration of Lee ¶8; Declaration of Hecht ¶7).

Static claims Leader should be sanctioned because deposition transcripts and exhibits therein from this action, in particular a Licensing and Royalty Agreement between Static and Belnick, Inc. ("Licensing Agreement") stating a certain royalty rate paid to Static, were disclosed to Hecht.

However, Hecht is allowed access to "Confidential" documents, i.e. deposition transcripts and exhibits within such deposition transcripts, pursuant to Section 4(f) of the Protective Order (see Exhibits A and B in Plaintiff's ECF #58 filing) because Hecht furnished consulting services to Leader as part of the Joint Defense Agreement (JDA) between Leader and OJ Commerce.

## I.     LEADER DID NOT VIOLATE PROTECTIVE ORDER

As described in the Declarations of Leader's counsel, Jen-Feng ("Jeff") Lee, and OJ Commerce's counsel, Shlomo ("Sam") Y. Hecht, Leader and OJ Commerce formed a JDA after Leader obtained a cease-and-desist letter from Static to OJ Commerce regarding the patent-in-suit from Static's response to Leader's request for production of documents in November/December 2018 (Declaration Lee ¶4).

After some discussion, on or about February 15, 2019, Leader and OJ Commerce executed a JDA. As is common in a JDG relationship, counsel for separate parties who have been sued by the same Plaintiff for the same patents-in-suit, particularly by Non-Practicing Entity Plaintiffs, promote the joint defense interest by discussing and consulting as to joint defense strategies and issues regarding, for example, infringement, invalidity, damage evaluation, and any assertable equitable defenses that can be raised.

2

Counsel for Leader has been part of over 10 joint defense group arrangements (Exhibit A; Declaration of Lee, ¶¶1 and 2).

As is common in Joint Defense Agreements, Joint Defense Group counsel agreed to be obligated to protect confidential information obtained pursuant to a JDA. In addition to the JDA's obligations to protect confidential information, Leader arranged for Hecht to execute the Notice of Adherence to Protective Order ("Notice') in this action on February 19, 2019 (Exhibit B). Only after Hecht executed the Notice did Leader provide copies of the subject deposition transcripts and exhibits to Hecht (Declaration of Hecht ¶11; Declaration of Lee ¶11).

Consistent with the contractual context of a JDG, counsel for Leader and OJ Commerce consulted on joint defense issues and strategies, including but not limited to invalidity; noninfringement; and damage evaluation (Declaration of Lee ¶13; Declaration of Hecht ¶14). Hecht has complied with the terms of the Protective Order and has not disclosed Confidential information/documents with anyone not connected with this action (Declaration of Hecht ¶17).

Hecht's access to the confidential licensing information and consultation with Leader's counsel as a consulting attorney is within the meaning of section 4(f) of the Protective Order ("outside independent persons …. who are retained by a party or its attorneys to furnish consulting, technical or expert services … and have executed the Notice (Exhibit B).

Since Hecht is entitled to review Confidential information/documents as a consulting attorney, there has not been any violation of the Protective Order in this action.

## II. **HECHT WOULD HAVE RECEIVED THE SAME INFORMATION FROM OJ COMMERCE IN DISCOVERY IN THE OJ COMMERCE ACTION**

As set forth above, there are no grounds to find a violation of the Protective Order. However, in the event the Court finds Hecht is not a person entitled to receive Confidential

3

information/documents pursuant to the Protective Order, it is important to keep in mind the objected-to disclosure is the Static-Belnick, Inc. licensing information/documents.

Static's real complaint is while the OJ Commerce Florida case was stayed pending the outcome of this action (¶15 Declaration of Hecht), Static unsuccessfully tried to negotiate an exorbitant royalty rate with OJ Commerce.

Had the stay been lifted and discovery re-commenced in the OJ Commerce case, the Static-Belnick Licensing Agreement would have been disclosed in discovery (¶13 Declaration of Hecht), just as the Static-Belnick License was disclosed in discovery (request for production of documents) in this action. Therefore, there has been no "harm" by any alleged violation of the Protective Order as any such alleged violation was limited to disclosure of documents that would have been produced in discovery in the OJ Commerce case.

### III. DEFENDANT'S EXPERT RECEIVED THE SAME CONFIDENTIAL INFORMATION IN THE SAME MANNER AS HECHT DID

After Defendant's expert Ronald Kemnitzer executed the Notice to Adhere to PO ("Notice") on February 13, 2019, Leader provided to Mr. Kemnitzer the deposition transcripts (containing the confidential information). (Declaration of Lee ¶15).

Other than different scopes of consultation (Kemnitzer: invalidity and non-infringement; Hecht: comprehensively on all defense issues of invalidity, non-infringement, damages and any additional potential defenses), the same confidential information was received by both Messrs. Hecht and Kemnitzer in the same manner.

### IV. CONCLUSION

Based on the foregoing, Leader respectfully requests that the Court deny the motion for sanctions as there has been no violation of the Protective Order, or in the alternative, any perceived

4

violation was limited to disclosure of documents and/or information that would have been produced in discovery in the OJ Commerce case.

DATED: November 1, 2019 Respectfully submitted,

s/ *Michael J. Modl*
Michael J. Modl, SBN 1011419
AXLEY BRYNELSON, LLP
2 E. Mifflin Street, Suite 200
Post Office Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Facsimile: (608) 257-5444
E-mail: mmodl@axley.com

Jen-Feng Lee – Pro Hac Vice pending
Cal. Stae Bar No. 204328
LT PACIFIC LAW GROUP LLP
17800 Castleton Street, Suite 560
City of Industry, CA 91748
T: (626) 810-7200
E: jflee@ltpacificlaw.com

*Attorneys for Defendant Leader Accessories LLC*

5

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATIC MEDIA LLC.<br><br>   Plaintiff,<br><br>vs.<br><br>LEADER ACCESSORIES LLC<br><br>   Defendant. | Case No. 18-CV-330 |

# DECLARATION OF JEN-FENG (JEFF) LEE

My name is Jen-Feng Lee. I also go by Jeff Lee. I certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection.

1. I have been in more than ten (10) joint defense group ("JDG") arrangements, defending patent infringement cases. I compiled, attached as Exhibit A, a list of ten patent cases where I was one of the joint defense attorneys. In those patent cases, the infringement theories and damages models asserted by the patentees (the patentees are NPE entities: Non-Practicing Entities who do not practice the patents but derive revenues from licensing the patents they own. NPEs are also more colloquially referred to as "Trolls") are generally the same.

2. The Exhibit A list shows the lead case (lower number case); my client's cases were trailing the lower-number cases and were handled in some common fashion (case scheduling, trial preparation, etc.) along with the lower-number cases by the judges. In a few of the JDG cases, no formal Joint Defense and Confidentiality Agreement ("JDA") was finalized and executed, though various defense counsel participated in JDG counsel meetings, discussions, case consultation and analysis for the joint defense in a way that is not different from cases where a formalized and executed JDA existed.

3. In my past experience, JDG counsel worked like a group of mutually retained outside counsel for the purpose of common defense by discussing and consulting with one another, to promote the joint interest. In my past JDG working experience, JDG counsel are obligated to protect any confidential information, if such confidential information is shared and used for the purpose of the joint defense.

4. During the course of this case, I learned that Plaintiff sent a cease-and-desist letter to OJ COMMERCE LLC ("OJ COMMERCE"), asserting infringement of the same D400

2

Patent. Plaintiff produced the cease-and-desist letter in response to my request for production of documents.

5. Mr. Shlomo Hecht (he goes by Sam Hecht), attorney for OJ COMMERCE, and I got in touch around November or December, 2018. We discussed and agreed that we would form a Joint Defense Group ("JDG"). I told Sam that I had multiple participations in JDG arrangements over the years and would provide a draft for a Joint Defense Agreement ("JDA") at a later time, in light of the fact that no court case was filed against OJ COMMERCE at that point.

6. We started to discuss defense strategies, including OJ COMMERCE taking the preemptive step of a Declaratory Judgment action ("DJ Action') filing, to assert non-infringement, invalidity, and other possible defenses.

7. Plaintiff filed the infringement case against OJ COMMERCE in Southern District of Florida, case number 19-cv-60270 ("SDFL Action") on 1/30/2019. I was promptly informed by Sam of this fact.

8. I sent a draft of JDA and we finalized and fully executed the JDA on 2/15/2019.

9. It is my understanding that our fully executed JDA contains JDG counsel's obligation to protect confidential information. Some relevant parts of our Joint Defense and Confidentiality Agreement include:

> WHEREAS, there may be certain Defense Materials that are of such a sensitive nature that the producing Parties wish to restrict access to them only to the outside law firm(s) or attorney(s) representing the receiving Parties, with such extra-sensitive Defense Materials being referred to in this Agreement as "Outside Counsel Only Defense Materials," or "OCO Defense Materials"; and
>
> WHEREAS, to the extent the Parties have previously shared Defense Materials, it has been with the express understanding and agreement that such Defense Materials shall be kept confidential and protected from disclosure to any third parties; and, in the absence of such sharing, these Defense Materials would be protected from disclosure to adverse or other parties as a result of the

3

attorney client privilege, the attorney work product doctrine, the joint defense privilege, the common interest doctrine, or other applicable privileges; and

WHEREAS, it is the intention of the Parties to confirm that any past exchange, as well as any future exchange, of Defense Materials in connection with the Actions does not diminish in any way the confidentiality of those Defense Materials, or any privilege or immunity applicable thereto, and the Parties wish to preserve the confidentiality of, and the privileges and immunities pertaining to, such Defense Materials to the broadest extent permitted by applicable law.

10. I also presented the Protective Order ("PO") in the instant action and asked Sam to sign the Notice of Adherence to the Protective Order ("Notice"). Sam signed and returned the Notice to me on February 19, 2019.

11. After receiving the signed Notice, on 2/19/2019, I sent to Sam the deposition transcripts in the instant action, for more effective joint defense consultation and discussion. The transcripts include certain Static Media's confidential materials, such as licensing information. I obtained Static Media's confidential materials by propounding discovery such as request for production of documents and interrogatories.

12. In light of my planned Motion for Summary Judgment ("MSJ") in April, our joint defense discussion and consultation became more active.

13. Without disclosing the privileged and confidential content of the consultation, Sam and I discussed various aspects of the defenses, including issues of retaining/sharing experts, damages evaluation, invalidity and non-infringement arguments in my MSJ filing, overall joint defense strategies, etc.

14. The Static Media's confidential materials would have been available to OJ COMMERCE given that OJ COMMERCE has been in litigation with Static Media, under a same or similar protective mechanism, such as a protective order in the SDFL Action.

15. On February 13, 2019, Defendant's Expert Mr. Ronald Kemnitzer executed the same Notice of Adherence to PO. I then provided to Mr. Kemnitzer the same deposition

4

transcripts (containing the exhibits). I see no difference between the way the confidential materials were received/reviewed by Messrs. Hecht and Kemnitzer, except that Keminitzer's consultation is limited to the infringement and invalidity issues, whereas the consultation with Sam Hecht was more comprehensive, encompassing infringement, invalidity, damages, and additional and assertable potential defenses.

16. I had phone conversations with Sam Hecht on 10/18/2019 and 10/21/2019 and Sam confirmed that he has honored his obligations to protect the confidentiality of the information/documents in a manner that's consistent with the obligations spelled out in the JDA and the Protective Order.


DATED: November 1, 2019    Respectfully submitted,

By: /s/ Jen-Feng Lee

Jen-Feng Lee – *Admitted Pro Hac Vice*
Cal. Stae Bar No. 204328
LT PACIFIC LAW GROUP LLP
17800 Castleton Street, Suite 560
City of Industry, CA  91748
T: (626) 810-7200
E: jflee@ltpacificlaw.com

*Attorneys for Defendant Leader Accessories LLC*

5

**NorthPeak Wireless, LLC v. 3Com Corporation et al**

08-cv-01813; Northern District of Alabama

**U.S. Ethernet Innovations, LLC v. Ricoh Americas Corporation**

12-cv-00235; Eastern District of Texas

**Canatelo, LLC v. Avigilon Corp.**

12-cv-01431; Puerto Rico District Court

**Gordium Innovations, LLC v. TP-Link USA**

12-cv-10006; Central District of California

**Innovative Wireless Solutions, LLC v. ZyXEL Communications, Inc.**

13-cv-01812; Central District of California

(Some JDG members were in co-pending cases in Delaware District Court)

**Quad Powerline Technologies LLC v. Actiontec Electronics, Inc.**

14-cv-01166; Eastern District of Texas

**IOdapt, LLC v. D-Link Systems, Inc.**

15-cv-00237; Eastern District of Texas

**Chrimar Systems, Inc. d/b/a CMS Technologies et al v. ADTRAN, Inc.**

15-cv-00618; Eastern District of Texas

**Anza Technology, Inc. v. Aerohive Networks Incorporated**

16-cv-01260; Southern District of California

**Magnacross LLC v. Avaya, Inc.**

16-cv-01461; Eastern District of Texas

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATIC MEDIA LLC. <br><br> Plaintiff, <br><br> vs. <br><br> LEADER ACCESSORIES LLC <br><br> Defendant. | Case No. 18-cv-330 |

# DECLARATION OF SHLOMO Y. HECHT

1

My name is Shlomo Y. Hecht. I also go by Sam Hecht. I am the attorney of record for OJCOMMERCE, LLC ("OJCOMMERCE") in the *Static Media LLC v. OJCOMMERCE, LLC* case, No. 19-cv-60270, pending in Southern District of Florida (the "SDFL Action"), where the Plaintiff is asserting patent infringement based upon its D771,400 design patent ("D400 Patent"). I certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection.

1. On October 9, 2018, Mr. T.J. DoVale, a partner with the firms of Fisher Broyles, LLP, sent a letter to OJ Commerce claiming that a certain OJCOMMERCE's product ("Naomi Home Bench Riders") infringed upon the D400 Patent.

2. It is my understanding that Mr. T.J. DoVale is the sole inventor of the D400 Patent.

3. I searched for patent case filings related to the D400 Patent and found an ongoing case of *Static Media v. Leader Accessories*, case no. 18-cv-330, pending in Western District of Wisconsin (the "WDWI Action"), asserting the same D400 Patent.

4. I got in contact with Leader Accessories' attorney, Mr. Jen-Feng (Jeff) Lee in or around November/December, 2018. We discussed and agreed that we would form a Joint Defense Group ("JDG"). Jeff Lee indicated that he had multiple participations in JDG arrangements over the years and would provide a draft for a Joint Defense Agreement ("JDA") at a later time, in light of the fact that no court case was filed against OJCOMMERCE then.

5. We started to discuss defense strategies including OJCOMMERCE potentially taking the preemptive step of a Declaratory Judgment action filing, to assert noninfringement, invalidity, and other possible defenses.

6. Plaintiff filed the SDFL Action on 1/30/2019. I promptly informed Jeff Lee of the case filing.

2

7. Jeff Lee then sent me a draft JDA and we finalized and fully executed the JDA on 2/15/2019.

8. It is my understanding that JDG counsel works like a group of mutually retained outside counsel for the purpose of common defense by discussing and consulting with one another, to promote the joint interest. It is also my understanding that JDG counsel are obligated to protect all shared confidential information/documents.

9. It is my understanding that our fully executed JDA contains an obligation on JDG counsel to protect such confidential information/documents.

10. In addition, Jeff Lee presented a Protective Order ("PO") in the WDWI Action; I signed the Notice of Adherence to the Protective Order ("Notice") on February 19, 2019. A copy of the Notice is attached herein as Exhibit B.

11. On 2/19/2019 after I sent the signed Notice to Jeff Lee, he provided to me the deposition transcripts in the WDWI Action. The transcripts contain certain Static Media's confidential materials, including the royalty agreement and payment information for its D400 Patent.

12. Our joint defense discussion and consultation became more active, in light of Leader Accessories' planned Motion for Summary Judgment ("MSJ") filing in April of 2019.

13. Static Media's confidential materials would have been available to me given that OJCOMMERCE has been in litigation with Static Media, had I propounded discovery requests, under a same or similar protective mechanism, such as a protective order in the SDFL Action.

14. In light of Leader Accessories' MSJ filing in the WDWI Action, our discussion encompassed various topics such as, without disclosing the privileged and confidential nature of the content of discussion, retaining/sharing experts, damages evaluation,

3

invalidity and non-infringement arguments in Leader's MSJ filing or for trial, and other joint defense strategies.

15. On June 14, 2019, the SDFL Court issued an order to stay the proceedings, pending the outcome of the WDWI action, and directed the clerk to close the case, halted all pending deadlines, and denied all outstanding motions as moot. It was my understanding that during the stay, no discovery could be propounded upon any party. Static Media's confidential information/documents would have been available to me anyway, either for settlement talks or for any substantive determination by motion or trial.

16. On September 11, 2019, a settlement conversation was held between OJCOMMERCE and STATIC MEDIA regarding the SDFL action, whereby OJ COMMERCE voluntarily produced its confidential financial records. In return, STATIC MEDIA replied with an extremely high royalty demand on those transaction, significantly more than and not supported by the royalty arrangement disclosed in the WDWI action. At that point, I advised STATIC MEDIA that we have a JDA with counsel in the WDWI action, and I'm fully aware about the actual royalties received, and any demand above that, is simply outrageous.

17. I have followed the obligations set forth in our executed JDA and the PO in the WDWI case for the protection of the confidential information/documents pertaining to Static Media, and have not shared any confidential information with any party or any non-attorney. Nor did I disclose any of the confidential information to any non-attorney personnel of OJ COMMERCE.

4

5

DATED: October 30, 2019 At: Miramar, Florida

                                              By: /s/ Shlomo Y. Hecht
                                                  Sholomo Y. Hect

## EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

STATIC MEDIA LLC,

      Plaintiff,

v.

      Case No. 18-cv-330-wmc

LEADER ACCESSORIES LLC,

      Defendant.

### NOTICE OF ADHERENCE TO PROTECTIVE ORDER

    Shlomo Y Hecht declares that:

    I reside at 11651 Interchange Cir S in the city of Miramar, county of Broward state of FL;

    I am currently employed by Shlomo Y Hecht, PA located at 11651 Interchange Cir S and my current job title is Attorney.

    I have read and believe I understand the terms of the Protective Order dated September 14, 2018, filed in Case No. 18-cv-330-wmc pending in the United States District Court for the Western District of Wisconsin. I agree to comply with and be bound by the provisions of the Protective Order. I understand that any violation of the Protective Order may subject me to sanctions by the Court.

    I shall not divulge any information or documents or copies of documents designated Confidential or Highly Confidential – Trial Counsels' Eyes Only obtained pursuant to such Protective Order or the contents of such documents to any person other

9

EXHIBIT B

than those specifically authorized by the Protective Order. I shall not copy or use such information or documents except for the purposes of this action and pursuant to the terms of the Protective Order.

As soon as practical, but no later than 30 days after final termination of this action, I shall return to the attorney from whom I have received any documents in my possession designated Confidential or Highly Confidential – Trial Counsels' Eyes Only and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

I submit myself to the jurisdiction of the United States District Court for the Western District of Wisconsin for the purpose of enforcing or otherwise providing relief relating to the Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2019     _____
                                      (Signature)

EXHIBIT B