UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

**STATIC MEDIA LLC,**

      Plaintiff,                                  Case No.  0:19-cv-60270-RKA

v.

**OJCOMMERCE, LLC,**

      Defendant.

_____/

## PLAINTIFF STATIC MEDIA LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY ATTORNEY SHLOMO Y. HECHT AS COUNSEL FOR DEFENDANT OJCOMMERCE, LLC AND FOR ATTORNEYS' FEES AND REQUEST FOR HEARING

    Plaintiff Static Media LLC ("Static Media"), by and through its undersigned counsel, replies in support of its Motion to Disqualify Attorney Shlomo Y. Hecht as Counsel for Defendant OJCommerce, LLC and for Attorneys' Fees [D.E. 30].  A motion to disqualify is a serious matter and not one that Static Media or its counsel takes lightly.  However, Mr. Hecht's actions have left Static Media with no choice but to request his removal from this action.  His defiance and demonstrated lack of understanding of both his ethical duties and basic patent law leads to the conclusion that Mr. Hecht cannot be allowed to continue as counsel for Defendant OJCommerce, LLC ("OJCommerce") in this case.  He has shown no respect for a federal court order and is willing to blatantly defy that protective order in order to serve his client's interests.  His ethical breaches damage the integrity of the legal profession and his effectiveness in this case.  This breach cannot be remedied by any other means and disqualification is in the best interests for all parties.

    As an initial matter, while Static Media does not wish to dignify OJCommerce's Preliminary Statement with a response, which only purpose seems to be to impugn Static Media, Static Media feels compelled to correct the record.  Static Media is not a patent troll and that OJCommerce would accuse Static Media of such shows either a willful misrepresentation of the facts or a complete lack of understanding of patent law and its basic terms.  The 'D400 Patent was duly and validly issued to the inventor and applicant Anthony Joseph DoVale ("Mr. DoVale")

1

created the 'D400 Patent. (D.E. 6 ¶ 8, Ex. 1; D.E. 25 ¶ 8; D.E. 23-1 at 2.) Mr. DoVale is the managing member of Static Media. (D.E. 23-1 at 1.) On September 10, 2017, Mr. DoVale assigned all rights, title and interest in the 'D400 patent to Static Media, a company he also controls. (D.E. 23-1 at 5; D.E. 6 ¶ 9.) Static Media practices the 'D400 Patent by distributing, selling, offering for sale, marketing and advertising certain stadium seats covered by the 'D400 Patent via an exclusive licensing agreement with Belnick, Inc. (D.E. 6 ¶ 10; D.E. 23-1 at 5.)

Moreover, Static Media has not been "[wreaking] havoc among stadium seat manufacturers and retailers, by filing meritless lawsuits across the country, falsely alleging infringement against numerous defendants." (D.E. 34 at 1.) Static Media has filed exactly two lawsuits to defend its patent: the Wisconsin Action and this case. Any allegation that Static Media is a patent troll is meritless and slanderous.

### A. OJCommerce has Improperly Submitted the Parties' Settlement Communications to the Court

Static Media will address OJCommerce's request to file Static Media's trade secret and confidential information in its response to OJCommerce's Motion to Seal Document [D.E. 33]. However, OJCommerce's submission of the details of Static Media's settlement offer demonstrates a total disregard for the Federal Rules of Evidence. Offers of settlement are generally not admissible to prove or disprove a claim. Fed. R. Evid. 408. It is for that very reason that Static Media redacted all information relating to the specifics of the settlement discussions between the parties, particularly since such information is irrelevant to whether Mr. Hecht should be disqualified as counsel for OJCommerce in this action. However, Mr. Hecht's representation of the September 26, 2019 telephone call between counsel, as set forth in his affidavit [D.E. 34-1], contains several inaccuracies and misrepresentations.[1]

In that call, Mr. Hecht never demanded any documentation regarding royalty fees nor did he identify himself as a "consultant" to Leader Accessories LLC ("Leader"). Instead, as the discussion turned to a reasonable royalty, Mr. Hecht announced unprompted that OJCommerce

---

[1] Immediately following the September 26, 2019 call, undersigned counsel both prepared a memorandum of that call and a declaration regarding the same when the matter was fresh in her memory. (*See* D.E. 29-1 at 27-28, ¶ 8.) Even though OJCommerce has already improperly submitted the details of the parties' settlement discussions to the Court, Static Media does not believe it would be proper to file the September 26 Memorandum with the Court. Instead, Static Media will provide the memorandum to the Court for a *in camera* review if requested.

had entered into a joint defense agreement with Leader and that he was in possession of all of the depositions and materials from the Wisconsin Action. He then specifically mentioned having seen and read the Belnick agreement. Mr. Hecht's present claims to the contrary are simply not true.

Moreover, Mr. Hecht's latest affidavit contradicts his prior sworn statements and OJCommerce's representations to this Court. In response to the Wisconsin Motion for Sanctions, Leader asserted that it had provided all depositions and their exhibits to Mr. Hecht, which was confirmed under oath by Mr. Hecht and Mr. Lee. (D.E. 29-2 at 3, at 9 ¶ 11, at 14 ¶ 11.) In response to the Motion to Stay, OJCommerce again asserted that "a copy of [the Licensing Agreement] was obtained by Defendant's counsel in this action." (D.E. 31 at 1.) In his most recent sworn statement, however, Mr. Hecht now claims that he has not received a copy of the Belnick agreement and that he has only received a copy of a single deposition with no exhibits. (D.E. 34-1 ¶¶ 2-3.) Despite this statement being in direct contradiction to his prior statements, the fact still remains that Mr. Hecht has knowledge of Static Media's confidential and trade secret information, knowledge he gained in defiance of a federal court order.

### B.     Mr. Hecht's Possession of Static Media's Confidential Information Provides an Unfair Tactical Advantage to OJCommerce

OJCommerce asserts that Mr. Hecht's possession of Static Media's confidential information is not an "unfair tactical advantage" because eventually Static Media would have had to disclose the Belnick licensing agreement in discovery. OJCommerce's argument, that any possible violation is excused because the information would have been disclosed eventually, is along the lines of the ends justify the means. And perhaps that is the most tragic aspect of this situation. It may very well have been that, had this case progressed to discovery, Static Media would have disclosed its licensing agreements through the proper channels with a proper protective order in place. But, that was never given a chance to happen. Instead, Mr. Hecht took an unethical short cut to obtain that information, disregarding a federal court order in the process. As a result, early resolution of this matter was lost and the trajectory of this case changed.

OJCommerce further asserts that Static Media has failed to cooperate in discovery and that it should have produced the Belnick licensing agreement to OJCommerce already. First, the deadline to produce initial disclosures had not yet occurred before the filing of the Motion to Stay, and for the reasons set forth in that motion and Static Media's reply, Static Media does not believe that engaging in any discovery while the instant motion is pending is in the interests of either party

3

Case 0:19-cv-60270-RKA   Document 35   Entered on FLSD Docket 12/09/2019   Page 4 of 10

or the Court.  Second, Rule 26 does not require the production of documents with the initial disclosures.  As to documents relating to a party's claims or defense, only "description by category and location" is required to be disclosed.  Fed. R. Civ. P 26(a)(1)(A)(ii).  In relation to a computation of damages, the disclosing party must only disclose "a computation of each category of damages claimed by the disclosing party" and then make such documents that would support that computation available "for inspection and copying as under Rule 34 . . . ***unless privileged or protected from disclosure*** . . . ."  Fed. R. Civ. P. 26(a)(1)(A)(iii) (emphasis added).  Static Media is under no duty to produce a copy of a confidential and trade secret agreement with its initial disclosures and, as stated previously, it would not do so without the security of a protective order.  Moreover, OJCommerce has not propounded a single discovery request to date in this case.  Static Media has not failed to cooperate with any discovery because no discovery has been conducted by either party.

      **C.**    **The Disclosure of Static Media's Confidential and Trade Secret Information was Not Authorized**

OJCommerce asserts that only inadvertent disclosures of confidential information can form the basis for disqualification and that Mr. Hecht was specifically authorized to receive Static Media's confidential information pursuant to the Wisconsin Protective Order, as Mr. Hecht now claims that he was retained by Leader and served as a consultant in the Wisconsin Action.  (D.E. 34 at 6-7.)  First, Mr. Hecht absolutely was **not** authorized to receive this information under the Wisconsin Protective Order and it defies logic to assert that Static Media would have anticipated that its opposing counsel in another case could be considered a "consultant" under the Wisconsin Protective Order.

The clause in which OJCommerce seeks shelter is as follows:

> Access to any Confidential information or document shall be limited to . . . outside independent persons (i.e., persons not currently or formerly employed by, consulting with or *otherwise associated with any party*) who are retained by a party or its attorneys to furnish consulting, technical or expert services and/or to give testimony in this action and have executed the "Written Assurance" as specified . . . .

(D.E. 29-1 at 16-17, ¶ 4(f) (emphasis added).)  A joint defense agreement is not a retention of services between a client and another attorney.  It is an agreement between two parties, in this case Leader and OJCommerce, so that the parties' counsel may share information under a common attorney-client privilege.  It is not an agreement between individual counsel and or between Mr.

4

Hecht personally and Leader.  A joint defense agreement is not a consulting agreement.  Further, the Wisconsin Protective Order explicitly excludes any third-parties currently associated with any party from receiving any of the protected information under section 4(f).  Clearly, Mr. Hecht had an association with Static Media, as he was the opposing counsel in this case at the time he knowingly and purposefully obtained Static Media's confidential and trade secret information.  No construction of the Wisconsin Protective Order would have permitted Leader to provide counsel for OJCommerce with the protective information under a joint defense agreement that was never disclosed to Static Media.

Second, OJCommerce cites to *JAWHBS, LLC v. Arevalo*, 224 F. Supp. 3d 1296 (S.D. Fla. 2016), for the proposition that only inadvertent disclosures of confidential information can provide a basis for disqualification and that "unauthorized" disclosures are not sanctionable.  *Arevalo* is not a correct expression of Florida law to the extent that it finds that only inadvertent disclosures will subject an attorney to disqualification.  In *Arevalo,* the court focused exclusively on whether the disclosure of confidential information in that matter was inadvertent, commenting that it "[could not] find under the circumstances that [the] disclosure was clearly unauthorized or that Plaintiff's Counsel should have known that."  *Arevalo*, 224 F. Supp. 3d at 1301 n.6.  Because the information disclosed was not done so inadvertently and there was no clear evidence that the disclosure was unauthorized, the court declined to disqualify counsel.

OJCommerce's extrapolation of *Arevalo* to mean that only inadvertent disclosures can provide a basis for disqualification is a step too far.  To accept this interpretation would mean that intentional misappropriations of confidential or privileged information would have no consequences.  That position is not supported under Florida law.  (*See* D.E. 30 at 14.) "Undoubtedly, there are some situations when a party's lawyer reviews another party's privileged documents outside the normal course of discovery and, therefore, must be disqualified." *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 158–59 (Fla. 3d DCA 2005) (citing *Abamar Housing & Dev., Inc. v. Lisa Daly Lady Decor, Inc*., 724 So. 2d 572, 574 (Fla. 3d DCA 1998)).  Mr. Hecht was not authorized or permitted to possess Static Media's confidential information at the time he obtained it and his possession and use of that confidential in this action was a clear violation of his ethical duties as an attorney.  This is a sufficient basis for disqualification under Florida law.

### D. Hecht's Actions Post-Disclosure Support Disqualification

OJCommerce cites *Moriber v. Dreiling*, 95 So. 3d 449 (Fla. 3d DCA 2012), to support its argument that Mr. Hecht's actions post-disclosure do not warrant disqualification. *Moriber* states, in reference to *inadvertent* disclosures (which is not the case here), that "courts must look not only to the content of the inadvertent disclosure, but also 'to the actions taken by the receiving lawyers' upon their receipt of the inadvertent disclosure" in evaluating whether "there is a 'possibility' that the receiving party has obtained an 'unfair' 'informational advantage' as a result of the inadvertent disclosure." *Moriber*, 95 So. 3d at 454. Static Media agrees that Mr. Hecht's actions should be scrutinized in the same way.

In *Moriber*, the attorney who received the inadvertent disclosure immediately destroyed all copies of the confidential document upon being notified that the document should not have been disclosed. *Moriber*, 95 So. 3d at 457. "Thus, unlike in [other cases], the [receiving] attorneys were entirely cooperative, rather than recalcitrant, in rectifying the disclosure." *Id.* "[A]n attorney who follows the dictates of the Ethics Opinion, and complies with the obligation to *promptly notify* and to *return immediately* the inadvertently produced documents without exercising any unfair advantage (such as photocopying the 'confidential documents' prior to returning them), will not be subject to disqualification." *Abamar*, 724 So. 2d at 574 n.2. The willingness of the attorney to abide by the ethical rules in a prompt manner mitigated against disqualification in *Moriber*.

In this case, however, the disclosure was not inadvertent, and Mr. Hecht has not demonstrated any willingness to comply with the Rules Regulating the Florida Bar. First, Mr. Hecht intentionally and willfully obtained Static Media's confidential information in direct violation of a federal court order. Second, Mr. Hecht then used that information to gain an unfair informational advantage and delay this action. Third, upon being caught in the act, instead of attempting to rectify the situation, Mr. Hecht and OJCommerce have defiantly maintained that his actions were proper and authorized under the Wisconsin Protective Order, when they clearly are not. This is not a situation, such as in *Moriber*, where the attorney's action after the disclosure indicated a faithful adherence to the ethical rules. Quite the opposition, Mr. Hecht's actions indicate a lack of understanding of his ethical duties and the rules governing the legal profession.

### E. Plaintiff's Motion was Timely

OJCommerce asserts that Static Media was untimely in bringing its motion to disqualify and that the filing of the Joint Scheduling Report constituted a waiver of the right to object. This

is not correct or supported by the applicable case law. The two cases cited by OJCommerce to support this position involved a motion to disqualify based upon a conflict of interest, not a violation of a court order. In each case, the moving party knew of the alleged conflict months to years prior to filing the motion and waited until the eve of trial to raise the issue. *See Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725 (11th Cir. 1988) (motion to disqualify filed on the eve of trial and after knowledge of potential conflict two years earlier and written waiver of objection the prior year); *Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg*, 934 F. Supp. 406 (M.D. Fla. 1996) (motion to disqualify filed eight months after discovery of alleged conflict and only two months before the end of discovery). There was no such delay here.

Upon learning of the violation of the protective order, Static Media moved expeditiously to bring the issue to the attention of the Wisconsin trial court, filing its Motion for Sanctions within three weeks of learning that Mr. Hecht had improperly obtained Static Media's confidential information. (*See* D.E. 29-1.) Because of the somber nature of a motion to disqualify, Static Media believed it would be prudent to obtain a determination from the Wisconsin trial court that Leader had violated the Protective Order before raising the issue with this Court. However, once Leader filed its response, accompanied by Mr. Hecht's affidavit in which he brazenly admitted under oath to violating the Wisconsin Protective Order, Static Media realized it had to bring the matter to the Court's attention immediately. Thus, two days later, and within six weeks of first learning of the violation of the Wisconsin Protective Order, Static Media notified the Court of the disqualifying event by filing its Motion to Stay Discovery [D.E. 29].

Moreover, Static Media abiding by this Court's Order [D.E. 24] to prepare a joint scheduling report is in no way a waiver of its objection to Mr. Hecht continuing to serve as counsel in this matter. Nor is the filing of a Joint Scheduling Report an explicit endorsement of Mr. Hecht remaining as counsel in this matter. A waiver, due to the failure to make a timely objection, occurs because "'[a] litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.'" *Cox*, 847 F.2d at 729 (quoting *Jackson v. J.C. Penney Co.*, 521 F.Supp. 1032, 1034-35 (N.D. Ga. 1981)). Here, there has been no substantial preparation of case, as OJCommerce has only answered the Amended Complaint and no discovery has been conducted to date. If anything, Static Media has moved as quickly as it could under the circumstances to bring this matter to the Court's attention, providing OJCommerce time to secure new counsel

7

before significant resources are invested into this matter. Static Media has not waived its objection and its motion is timely.

### F.     The Balance of Interests Warrants Disqualification

As OJCommerce has stated, "[w]hen adjudicating a motion to disqualify, *some* courts have looked to balancing tests to determine whether disqualification is warranted." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008) (emphasis added). "Among the factors that courts have considered are: the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment." *Id.* The balance of those factors warrants disqualification here.

The nature of the ethical violation present is the blatant and unrepentant violation of a federal court order. Mr. Hecht's ability to effectively represent his client in this matter is in doubt now that his actions have come to light. This Motion is not being used as a tactical device or a means of harassment. Quite the contrary, Static Media brought this motion only when it became apparent there was no other recourse and disqualification was the only proper remedy for the ethical violations that occurred. But perhaps most importantly, if Mr. Hecht is not properly sanctioned and is allowed to continue representing OJCommerce in this case, it will cause damage to the public's perception of the profession.

On April 12, 2017, Mr. Hecht took the Oath of Attorney in Florida and he swore: "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications."[2] "[E]very lawyer is responsible for observance of the Rules of Professional Conduct." R. Regulating Fla. Bar Preamble. "Neglect of these responsibilities compromises the independence of the profession and the public interest that it serves." *Id.* "In fulfilling his or her primary duty to a client, a lawyer must be ever mindful of the profession's broader duty to the legal system. This broader duty to the administration of justice and the judiciary cannot be forsaken in the name of zealous advocacy or self-interest." *Young v. Hector*, 884 So. 2d 1025, 1028 (Fla. 3d DCA 2004).

---

[2] *See* Oath of Admission to The Florida Bar, available at https://www-media.floridabar.org/uploads/2017/04/oath-of-admission-to-the-florida-bar-ada.pdf; *see also* Shlomo Y. Hecht, Florida Bar Member Profile, available at https://www.floridabar.org/directories/find-mbr/profile/?num=127144.

Over the past month, Mr. Hecht has shown no remorse or understanding that his behavior is not permissible under the Rules of Professional Conduct. Instead, Mr. Hecht has shown a willingness to defy a federal court order to further the interests of his client. This is far beyond the bounds of zealous advocacy and specifically prohibited under Rules Regulating The Florida Bar 4.3.4(c) and 4-4.4(a). As stated by the Third District Court of Appeal:

> Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process.

*Abamar*, 724 So. 2d at 574 (quoting *General Accident Ins. Co. v. Borg-Warner Acceptance Corp.*, 483 So. 2d 505, 506 (Fla. 4th DCA 1986)). The same holds true here. Static Media's Motion to Disqualify should be granted and Mr. Hecht disqualified from representing OJCommerce in this action.

### G.    Request for Hearing

Static Media requests a hearing on its Motion to Disqualify and estimates that thirty (30) minutes for argument. Static Media believes oral argument would aid the Court by providing a fuller explanation of the relevant case law, patent law and ethical rules applicable to this matter. Further, Static Media would present undersigned counsel's memorandum of the September 29, 2019 telephone call with Mr. Hecht for an *in camera* review and discussion if requested.

For the reasons set forth in the Motion to Disqualify [D.E. 30] and above, the Court should disqualify Shlomo Y. Hecht, Esq. as counsel for Defendant OJCommerce, LLC, award Static Media its attorneys' fees incurred in connection with Mr. Hecht's unethical behavior and any further relief that the Court deems appropriate.

Respectfully submitted,

By: _____s/Susan V. Warner_____
      Susan V. Warner
      Florida Bar No. 38205
      susan.warner@fisherbroyles.com
      FISHERBROYLES, LLP
      1221 Brickell Avenue
      Suite 900

Miami, FL 33131
Tel: (786) 310-0637

Vincent Bushnell
*Admitted Pro Hac*
vincent.bushnell@fisherbroyles.com
FISHERBROYLES, LLP
945 East Paces Ferry Road NE
Suite 2000
Atlanta, GA 30326
Tel.: (678) 902-7190

*Attorneys for Plaintiff Static Media LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this  9th   day of December, 2019 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                           s/Susan V. Warner
                            Susan V. Warner

## SERVICE LIST
**STATIC MEDIA LLC  vs. OJCOMMERCE, LLC**
**CASE NO: 0:19-cv-60270-RKA**
**United States District Court, Southern District of Florida**

Shlomo Y. Hecht,
Shlomo Y. Hecht, P.A.
11651 Interchange Cir S
Miramar, FL 33025
Email: sam@hechtlawpa.com
*Attorney for Defendant OJ Commerce, LLC*
Service via CM/ECF